UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN C. ROCHA-CAZARES,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | NO. CV 09-7520 SS<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Juan C. Rocha-Cazares ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636©, to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

On July 28, 2006, Plaintiff filed an application for DIB under Title II and Part A of Title XVIII of the Social Security Act. (Administrative Record ("AR") 83, 100). Plaintiff alleged a disability onset date of May 6, 2001, on the bases of fibromyalgia, back, neck, and other recurring body pain. (AR 100). The Agency initially denied his application on January 1, 2007, and upheld the denial on April 2, 2007 (AR 47, 54). Plaintiff then requested a hearing, which was held before Administrative Law Judge ("ALJ") David J. Agatstein on October 16, 2008. (AR 26-39). Plaintiff appeared with counsel and testified. (AR 29-36). A vocational expert testified at the hearing. (AR 36-38).

On January 2, 2009, ALJ Agatstein issued a decision denying benefits. (AR 18). Plaintiff sought review of this decision before the Appeals Council. (AR 11). On July 25, 2009, the Appeals Council denied review. (AR 1). Plaintiff filed instant action on March 18, 2010.

**FACTUAL BACKGROUND**

On January 10, 2003, Plaintiff was treated at the North Oakland Medical Center Emergency Center in Pontiac, Michigan for back and chest pain sustained in a fall ten days earlier while working at a ski lift in Alpine Valley, Michigan. (AR 184). On April 21, 2003, Dr. Nadine Jennings treated Plaintiff in Waterford, Michigan. (AR 172). Dr. Jennings diagnosed Plaintiff with myofascial pain and mechanical lower back pain. (AR 172-173). In September and November of 2003, Dr. Joseph Salama examined Plaintiff in Southfield, Michigan in response to a

disability claim. (AR 199, 202). Dr. Salama concluded that Plaintiff could fulfill his normal employment duties. (AR 200, 209).

In December of 2005, Plaintiff injured his ankle in a fork lift accident. (AR 32-33). On February 23, 2006, Dr. Salvador Garfias treated Plaintiff at Clinica Monsenor Oscar A. Romero in Los Angeles, California. (AR 222). Over the next two years, Dr. Garfias treated Plaintiff on a regular basis, sometimes three or four times a month. (AR 216-230, 259-262, 291-99). At each visit, Plaintiff reported pain throughout his body. (AR 216-30, 259-262, 291-99).

Dr. Garfias wrote "suspect fibromyalgia" during Plaintiff's first visit. (AR 222). Dr. Garfias' treatment record indicated that he was "highly suspicious" that Plaintiff had fibromyalgia throughout the time Dr. Garfias treated Plaintiff. (AR 218, 220-222, 259-262, 292, 296). Dr. Garfias performed the "trigger points" test - a diagnostic tool that tests for pain in at least eleven of eighteen place on the body to confirm a fibromyalgia diagnosis - on March 15, 2008. (AR 292). On September 29, 2008, Dr. Garfias filled out a physical Residual Function Capacity ("RFC")[1] Questionnaire. (AR 336-339). In the RFC, Dr. Garfias diagnosed Plaintiff with fibromyalgia, based on muscle pain in several parts of Plaintiff's body. (AR 336). Dr. Garfias concluded that Plaintiff could not sit for more than fifteen minutes, stand for more than five minutes, required a break every fifteen minutes and could only occasionally lift less than ten pounds. (AR 337-338).

---

[1] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

The City Help Mobile Medical Clinic treated Plaintiff in Los Angeles from April through June of 2006. (AR 155-166). Plaintiff reported pain in his back (eight on a scale of one to ten), thorax (seven out of ten), and ankles (ten out of ten after walking for ten minutes). (AR 163). On April 9, 2007, Dr. Thomas Beardmore and Dr. Karen Shainsky of Rancho Los Amigos Rehabilitation Center in Downey, California examined Plaintiff, primarily for arthritis. (AR 300-01).

In sum, the Plaintiff consistently experienced moderate to severe pain from January 1, 2003 (when he slipped and fell while working at a ski lift in Michigan) until the end of the treatment record. Dr. Garfias, Plaintiff's primary treating physician, saw Plaintiff regularly over a two year period and diagnosed Plaintiff with fibromyalgia. No other treating source considered a fibromyalgia diagnosis, nor performed the "trigger points" test. Dr. Nadine Jennings provided the only other treating physician diagnosis in April of 2003, prior to Plaintiff's forklift accident. Dr. Jennings concluded that patient suffered from myofascial pain and lower back pain.

On December 11, 2006, Dr. Ibrahim Yashruti of the Millennium Multi-Specialty Medical Group examined Plaintiff at the request of the Department of Social Services, in response to Plaintiff's DIB filing. (AR 231). Dr. Yashruti consulted Dr. Jennings' 2003 records, but made no mention of Dr. Garfias' examination or conclusions. (AR 231-237). Dr. Yashruti concluded that Plaintiff could lift and carry twenty five pounds occasionally, ten pounds frequently, could stand and walk on level ground for six hours and sit for six hours in a work day. (AR 236-237).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

```
              404, Subpart P, Appendix 1?  If so, the claimant is
              found disabled.  If not, proceed to step four.
        (4)   Is the claimant capable of performing his past work?  If
              so, the claimant is found not disabled.  If not, proceed
              to step five.
        (5)   Is the claimant able to do any other work?  If not, the
              claimant is found disabled.  If so, the claimant is
              found not disabled.
```

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 25). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2005. (AR 20). At step two, he found that Plaintiff had the severe impairments of myofascial pain syndrome and back pain. (AR 20).

At step three, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment. (AR 21).

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work ("PRW") as a delivery driver, ski-lift operator, and assembler. (AR 24). He also found that Plaintiff had the RFC to perform the "full range of light work" and is "able to lift/carry 25 pounds occasionally and 10 pounds frequently. He can stand and walk 6 hours and sit 6 hours each in an 8-hour workday, with normal breaks." (AR 21). The ALJ concluded, "[t]here are no other limitations." (AR 21). Because the ALJ determined that Plaintiff could perform his PRW, he concluded that Plaintiff was not disabled and did not proceed to step five. (AR 24).

\\
\\
\\
\\
\\

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

Plaintiff contends the ALJ erred for two reasons: (1) the ALJ failed to properly consider the opinion of Dr. Salvador Garfias (Memorandum of Points of Authorities in Support of Plaintiff's Complaint ("PC") 2-12); and, (2) the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective complaints. (PC at 12-16).

The Court agrees with these contentions. For the reasons discussed below, the Court finds that the ALJ's decision should be reversed and this action remanded for further proceedings.

**A.   The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Treating Physician's Opinion**

Plaintiff claims that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Salvador Garfias' opinion. (PC at 2-12). The Court agrees.

Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir., as amended Apr. 9, 1996). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The opinion of a treating physician who has a substantially greater opportunity to know and observe a claimant is entitled to similar "special weight" over the opinion of a treating physician with significantly less experience with the claimant. A claimant's primary treating physician's opinion should only be rejected for specific and

legitimate reasons, even when contradicted by a treating physician with less experience with the claimant.

Here, Dr. Garfias treated Plaintiff on a regular basis over the course of two years. (AR 216-230, 259-262, 291-299). Dr. Garfias suspected Plaintiff had fibromyalgia while treating Plaintiff. (AR 218, 220-222, 259-262, 292, 296). Dr. Garfias performed the "trigger points" test to confirm the fibromyalgia diagnosis on March 15, 2008. (AR 292). On September 29, 2008, Dr. Garfias filled out an RFC and diagnosed Plaintiff with fibromyalgia. (AR 336). Dr. Garfias concluded that Plaintiff could not sit for more than fifteen minutes, stand for more than five minutes, required a break every fifteen minutes and could only occasionally lift less than ten pounds. (AR 337-8).

The ALJ found that Plaintiff had myofascial pain syndrome and back pain. (AR 20-21). The ALJ also found that Plaintiff could perform the full range of "light work" - to lift/carry twenty five pounds occasionally and ten pounds frequently, stand and walk six hours and sit six hours each in an eight hour workday. (AR 21-23). The ALJ rejected Dr. Garfias' fibromyalgia diagnosis, and rejected Dr. Garfias' RFC. (AR 21, 23). The ALJ based his myofascial pain syndrome and back pain finding on treating physician Dr. Jennings' 2003 diagnosis, made after one visit by Plaintiff. (AR 20-21, 172-3). The ALJ based his RFC finding on consulting examiner Dr. Yashruti's conclusions, made after one examination of Plaintiff, done at the request of the Department of Social Services. (AR 23-4, 231).

\\
\\

1    The ALJ discussed and rejected Dr. Garfias' fibromyalgia diagnosis
2 and RFC. (AR 23-24). In doing so, the ALJ failed to give specific and
3 legitimate reasons for rejecting Dr. Garfias' opinion.

5    The ALJ rejected Dr. Garfias' opinion because the "degree of
6 severity indicated is unsubstantiated by the medical records and course
7 of treatment recommended by the claimant's physicians." (AR 23). This
8 is not a legitimate reason because the medical records, as well as the
9 fibromaylgia diagnosis, <u>do</u> support the degree of severity found by Dr.
10 Garfias. Fibromyalgia is "poorly-understood within much of the medical
11 community, which may explain why [claimant] saw a succession of
12 physicians before being properly diagnosed." <u>Benecke v. Barnhart</u>, 379
13 F.3d 587, 591 (9th Cir. 2004). In rejecting Dr. Garfias' opinion, the
14 ALJ relied on his disbelief of Plaintiff's testimony and a
15 misunderstanding of fibromyalgia. (AR 22-24). "The ALJ erred by
16 'effectively requir[ing] 'objective' evidence for a disease that eludes
17 such measurement.'" <u>Id.</u> at 594 (quoting <u>Green-Younger</u>, 335 F.3d 99, 108
18 (2nd Cir. 2003)). Objective symptoms "do not establish the presence of
19 absence of fibromyalgia." <u>Jordan v. Northrop Grumman Corp. Welfare
20 Plan</u>, 370 F.3d 869, 872 (9th Cir. 2004). As stated in <u>Jordan</u>:

22    [F]ibromyalgia's cause or causes are unknown, there is no cure,
23    and, of greatest importance to disability law, its symptoms are
24    entirely subjective. There are no laboratory tests for the
25    presence or severity of fibromyalgia.

27    <u>Id.</u> Instead, a fibromyalgia diagnosis can only be confirmed by a
28 specific test where a patient reports pain in five parts of the body and

11

when at least eleven of eighteen points cause pain when palpated by an examiner's thumb. Id. (citing Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001)). Dr. Garfias performed the "trigger points" test and found pain in at least eleven of the 18 designated areas. (AR 292). No other physician - treating or examining - performed this test or provided reasons to question the way that Dr. Garfias's performed the test.

Furthermore, to the extent that the ALJ's refutation of Dr. Garfias' opinion is based on the ALJ's disbelief of Plaintiff's allegations of pain, the ALJ can only reject a plaintiff's subjective pain testimony if he articulates clear and convincing reasons for doing so. Lester, 81 F.3d at 834. As discussed below, the ALJ did not do so here.

In addition, the ALJ rejected Dr. Garfias' opinion because the claimant's course of treatment "has consisted of exercising, pain management, injections, and mild, anti-inflammatory medication. No severe or drastic treatment, such as surgery, has been suggested." (AR 23). This was not a legitimate reason to reject Dr. Garfias's opinion.

Not following a course of treatment may be a reason for rejecting a plaintiff's credibility; however, it is not a reason for rejecting a treating physician's diagnosis or opinion. See Orn v. Astrue, 495 F.3d 625, 637-9 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.")

1  (emphasis added).  Here, Plaintiff followed the recommended course of
2  treatment, which was the appropriate and not necessarily conservative
3  treatment for a disease like fibromyalgia.  Surgery is not a treatment
4  recommended for fibromyalgia.
5
6       Defendant contends that the ALJ was justified in relying on Dr.
7  Yashruti's and Plaintiff's other treating physicians evaluations because
8  the ALJ provides a "thorough summary of all the medical evidence, a
9  discussion of the conflicting evidence, and stated the ALJ's
10 interpretation."  (Defendant's Memorandum at 5) (citing Thomas v.
11 Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)) (citing Magallanes, 881
12 F.2d at 751).  However, in Thomas, the ALJ took into consideration the
13 treating physician's diagnosis in posing his hypothetical to the
14 vocational expert.  Thomas, 278 F.3d at 957.  The ALJ in the instant
15 action completely disregarded Dr. Garfias' opinion.  (AR 23).
16
17      Furthermore, while the ALJ recites the diagnosis of some of
18 Plaintiff's treating/consulting doctors, he does not provide specific
19 and legitimate reasons for rejecting Dr. Garfias' opinion.  (AR 22-24).
20 The ALJ could have found that the treating physician's diagnosis was
21 conclusory or unsupported by the record as a reason for rejecting Dr.
22 Garfias' opinion, but did not.  See Baston v. Comm'r of Soc. Sec., 359
23 F.3d 1190, 1195 (9th Cir. 2004) (holding that ALJ may discredit a
24 treating physician's opinion if it is conclusory, brief, and unsupported
25 by the record as a whole). Dr. Garfias' suspected fibromyalgia upon his
26 initial examination of Plaintiff and repeatedly wrote in Plaintiff's
27 record that Plaintiff likely suffered from the disease.  (AR 216-230,
28 259-262, 291-99).  Furthermore, Plaintiff consistently complained of

13

moderate to severe pain throughout his body, consistent with a fibromyalgia diagnosis. (AR 163, 216-230, 259-262, 284, 291-299). A mere recitation of differing doctor's opinion does not rise to the level of "discussion of the conflicting evidence" necessary to determine why the primary treating physician's opinion was rejected in favor of that of the consulting physician.

Finally, Defendant contends that Dr. Garfias improperly concluded that Plaintiff was disabled, as such a determination is "a matter reserved to the Commissioner." (Defendant's Memorandum at 7). Dr. Garfias' opinion, however, did not conclude that Plaintiff was disabled. Rather, Dr. Garfias opined that Plaintiff suffered from fibromyalgia and had limited ability to sit, stand and lift, medical opinions that the ALJ should evaluate in his determination of whether or not Plaintiff was disabled. (AR 336-339).

The ALJ failed to provide specific and legitimate reasons for rejecting Dr. Garfias' opinion in the current case. Remand is required.

**B.   The ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Pain Testimony**

Plaintiff claims that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints. (PC at 12-16). The Court agrees.

The ALJ may reject a plaintiff's testimony if he or she makes an explicit credibility finding that is "supported by a specific, cogent

reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (internal citations omitted). Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting the plaintiff's testimony must be "clear and convincing." Lester, 81 F.3d at 834. Moreover, the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

Plaintiff testified that he had pain in his back, limbs, body, and neck and that he had a hernia. (AR 22, 34). Plaintiff also testified that he could only stand for five to ten minutes, walk three blocks, and spent one hour total standing or walking in a day. (AR 22, 35).

The ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (AR 22). However, the ALJ, in a conclusory fashion, stated that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Plaintiff's] residual functional capacity assessment." (AR 22).

The ALJ's conclusion that Plaintiff's complaints were not credible because they were inconsistent with his medical records was not a convincing reason, as Plaintiff's complaints were, in fact, consistent with Dr. Garfias's diagnosis. (AR 22-24). Even if Plaintiff's medical records did not support the extent of Plaintiff's subjective symptoms testimony, this fact, by itself, is not sufficient for the ALJ to reject

15

Plaintiff's subjective pain testimony. See Lester, 81 F.3d at 834 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.").

Furthermore, the ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen, 80 F.3d at 1284 (emphasis added); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Although the ALJ characterized Plaintiff's statements regarding the impact of his impairments on his ability to work "not credible," this Court cannot glean any other reasons from the ALJ's opinion which portions of Plaintiff's testimony he did or did not credit. (AR 18-25).

As there is no evidence to support a finding that Plaintiff was malingering (and the ALJ failed to expressly make such a finding), the ALJ was required to provide "clear and convincing" reasons to reject his testimony. The ALJ may consider the following factors when weighing the claimant's credibility: (1) his reputation for truthfulness; (2) inconsistencies either in his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas, 278

F.3d at 958-59.  The ALJ failed to provide clear reasons for rejecting Plaintiff's testimony in the current case.  Remand is required.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. Furthermore, should the ALJ determine that the plaintiff cannot return to his previous work, then he should consider if there are other jobs in the economy that Plaintiff can perform, consistent with the Five-Step Sequential Evaluation Process.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 18, 2010

　　　　　　　　　　　　　　　　____/S/_____
　　　　　　　　　　　　　　　　SUZANNE H. SEGAL
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE